OLUKAYODE ALABI OLAIFA,

Plaintiff,

v.

KEVIN MCALEENAN,* Acting Secretary of
the Department of Homeland Security,
et al.,

Defendants.

No. 18 CV 6801

Judge Manish S. Shah

## ORDER

The government's motion to dismiss, [14], is granted in part, denied in part. Plaintiff's due process claim is dismissed. The government shall answer the complaint by November 5, 2019, and a status hearing is set for November 12, 2019 at 9:30 a.m.

## STATEMENT

A few weeks after plaintiff Olukayode Alabi Olaifa applied to become a United States citizen in 2016, he stopped by an Illinois Secretary of State's office to update the address on his identification. [1] ¶¶ 9–10.[1] While there, a clerk asked him if he would like to register to vote. [1] ¶ 10. When Olaifa said yes, the clerk filled out the forms for him, highlighted the areas where he needed to sign and, after Olaifa signed, handed him a receipt. *Id.* ¶ 10–11. Olaifa never read the form, never told the clerk that he was not a citizen (she never asked) and did not mark any of the boxes on the

---

* Kevin McAleenan is automatically substituted for the Secretary of the Department of Homeland Security. Fed. R. Civ. P. 25(d). McAleenan has tendered his resignation, but as of the date of this order, the department's website continues to refer to him as the Acting Secretary.

[1] Bracketed numbers refer to entries on the district court docket. Referenced page numbers are taken from the CM/ECF header placed at the top of filings. The facts are taken from the complaint ([1]) and from Olaifa's opposition to the government's motion to dismiss. [23]. *See Early v. Bankers Life & Cas. Co.*, 959 F.2d 75, 79 (7th Cir. 1992) ("a plaintiff is free, in defending against a motion to dismiss, to allege without evidentiary support any facts he pleases that are consistent with the complaint"); *United States ex rel. Hanna v. City of Chicago*, 834 F.3d 775, 779 (7th Cir. 2016).

form himself. *Id.* He was unaware that one of the boxes—ticked with a checkmark—indicated he was a citizen. *Id.* ¶ 11.

On election day that November, Olaifa visited a polling station in Calumet City, Illinois. [1] ¶ 13.[2] He gave a polling officer his voter ID card, driver's license, and state ID and, this time, told the officer that he was only a permanent resident. *Id.* The officer told Olaifa he could vote, and Olaifa voted. *Id.*

Olaifa first realized his mistake when he read in his naturalization booklet that only citizens may vote. *Id.* ¶ 14. During his initial interview with the United States Citizen and Immigration Service (one of the defendants in this case), he owned up to registering and voting and explained that he did not see or mark any of the boxes on the registration form. [1] ¶ 15. When his application was denied, he appealed and, as part of that appeal, participated in a second interview. [1] ¶¶ 16–17. During the second interview, he told the Immigration Service that he had been forthcoming with the polling officer about his status as a lawful permanent resident and pointed out that he normally uses "X's"—not checkmarks—when filling out forms. *Id.* ¶ 17. *See also* [1] at 13–17 (Olaifa attached to his complaint an addendum to a uniform residential loan application that bears his name and uses "X's" to mark answers).

The Immigration Service denied his appeal. *See* [1] at 21–24. The director of the Chicago Field Office found that Olaifa lacked good moral character because he had registered to vote and voted before becoming a citizen. *Id.* at 22–23 (citing 8 U.S.C. § 1101(f); 18 U.S.C. § 1015(f)). Olaifa's complaint seeks review of that denial. [1] ¶¶ 20–26. It also alleges that the Immigration Service violated his Fifth Amendment right to due process. [1] ¶¶ 27–32.

The government moves to dismiss both counts in the complaint, citing Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6). [14]. The government's Rule 12(b)(1) argument does not depend on facts not mentioned in the complaint; it is a facial challenge to jurisdiction. *See* [14] at 10–11; *Silha v. ACT, Inc.*, 807 F.3d 169, 173 (7th Cir. 2015). As such, it is assessed using the same standard of review for Rule 12(b)(6): well-pleaded and material factual allegations must be accepted as true[3] and,

---

[2] I take judicial notice of the fact that the 2016 United States presidential election was held on November 8, 2016.

[3] The government says that Olaifa must establish his good character by clear and convincing evidence. *See* [14] at 2–3 (citing *El-Ali v. Carroll*, 83 F.3d 414, 1996 WL 192169 *4 (4th Cir. 1996) (unpublished decision); *Dicicco v. U.S. Dept. of Justice INS*, 873 F.2d 910, 915 (6th Cir. 1989)). That is a dubious proposition, *see Lindo v. Sec'y, U.S. Dep't of Homeland Sec.*, 766 Fed. App'x 897, 901 n.3 (11th Cir. 2019); 8 C.F.R. § 316.2(b) (an applicant need only prove by a "preponderance of the evidence that he or she meets all of the requirements for naturalization"), that even if correct would not apply at this stage of the case: all Olaifa needs

construing those allegations in Olaifa's favor, the complaint must "plausibly give rise to an entitlement of relief." *Id.* (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009)). Jurisdiction is about a court's "power to hear a case and decide what the law requires," *Klene v. Napolitano*, 697 F.3d 666, 668 (7th Cir. 2012), and I have an independent obligation to make sure jurisdiction is secure. *Ruhrgas AG v. Marathon Oil Co.*, 526 U.S. 574, 583 (1999).

I have jurisdiction to review the Service's denial of Olaifa's naturalization petition. 8 U.S.C. § 1421(c). *See also Klene*, 697 F.3d at 667; *O'Sullivan v. U.S. Citizenship & Immigration Servs.*, 453 F.3d 809, 812 (7th Cir. 2006); *Levy v. I.N.S.*, 6 Fed. App'x 331, 332 (7th Cir. 2001) ("district courts have jurisdiction only in cases where the INS denies an application for naturalization"); *Shweika v. Dep't of Homeland Sec.*, 723 F.3d 710, 714 (6th Cir. 2013) ("It is well settled that § 1421(c) provides federal district courts with jurisdiction to review administrative denials of applications for naturalization.").

The Service may only grant an application if the applicant is a "person of good moral character, attached to the principles of the Constitution of the United States, and well disposed to the good order and happiness of the United States." 8 U.S.C. § 1427(a); 8 C.F.R. § 316.14(b); *Fedorenko v. United States*, 449 U.S. 490, 506 (1981) (all statutory requirements must be strictly complied with). Applicants that commit unlawful acts that "adversely reflect upon ... [their] moral character" must be found to lack good moral character unless they can show extenuating circumstances. 8 C.F.R. § 316.10(b)(3)(iii). *See also United States v. Suarez*, 664 F.3d 655, 661 (7th Cir. 2011) ("A finding contrary to this mandatory language would be a per se abuse of discretion").

Illegally voting in an election does not adversely reflect upon one's moral character as a matter of law. Certain categories of applicant (including gamblers and "habitual drunkards," 8 U.S.C. § 1101(f)(1), (4)) cannot be found to have good moral character. *See* 8 U.S.C. § 1101(f)(1)–(9). But "people who vote illegally" and "people who falsely represent themselves to be citizens" are not among them. *See id.* Congress even went so far as to identify limited situations where the fact that someone falsely represented themselves to be a citizen or voted illegally could never be the basis for determining that they do not have good moral character. 8 U.S.C. § 1101(f).

The government reads these provisions as a sign that—in all situations other than the limited situations identified, which are not present here—the act of unlawful voting precludes a finding that an applicant had good moral character. *See* [14] at 5. If Congress had wanted that result, it would have categorically excluded people that

---

to do is allege facts that plausibly suggest his naturalization petition should not have been denied.

voted illegally (or represented themselves to be citizens) along with gamblers and "habitual drunkards." 8 U.S.C. § 1101(f)(1), (8); *Muratoski v. Holder*, 622 F.3d 824, 831 (7th Cir. 2010) (the Board of Immigration Appeals correctly found that the immigration judge "could find, *but was not compelled to find*, that [plaintiff] lacked good moral character on the basis of his false claim of U.S. citizenship") (emphasis added). *See also Ray v. US Citizenship & Immigration Servs. Dallas Dist.*, No. 5:13CV88, 2014 WL 4404535, at *2 (E.D. Tex. Sept. 5, 2014) (declining to dismiss a complaint because it was possible for the plaintiff to show that they had good moral character—or that there were extenuating circumstances— despite voting illegally).

But even if illegally voting is a reflection of poor moral character as a matter of law, Olaifa might not have acted unlawfully. He might have a "good defense." *See Keathley v. Holder*, 696 F.3d 644, 646 (7th Cir. 2012). There are two criminal statutes at issue. The first prohibits falsely—and knowingly—claiming to be a citizen "in order to register to vote or to vote." 18 U.S.C. § 1015(f). The second prohibits lawful permanent residents like Olaifa from voting in presidential elections. 18 U.S.C. § 611; 8 U.S.C. § 1101(a)(3).

Because § 1015(f) requires the culpable person to act "knowingly," Olaifa did not commit the crime if his actions were the result of "ignorance, mistake or accident." *United States v. Graham*, 431 F.3d 585, 590 (7th Cir. 2005). Olaifa says that he did not know that the form he signed at the Secretary of State's office contained a checked box affirming that he was a citizen. *See* [1] ¶¶ 10–11, 13–14; [23] at 6–7. "'[K]nowingly' usually means with knowledge of the facts," *Kimani v. Holder*, 695 F.3d 666, 670 (7th Cir. 2012), and here, drawing all inferences in Olaifa's favor, the complaint alleges that he was not aware of one of the key underlying facts that would render his conduct at the Secretary of State's in violation of § 1015(f)—i.e., that a box on the form he was signing indicated he was a citizen. *Dixon v. United States*, 548 U.S. 1, 5 (2006) ("unless the text of the statute dictates a different result, the term 'knowingly' merely requires proof of knowledge of the facts that constitute the offense").

Section 611 was at issue in *Keathley, Kimani,* and *Fitzpatrick v. Sessions*, 847 F.3d 913, 915 (7th Cir.), *cert. denied*, 138 S. Ct. 221 (2017).[4] It does not mention any mental-state requirement, meaning that Olaifa could still have violated it even if he did not know that it was illegal for him to vote. Olaifa says that he relied on advice from a "polling officer" when he cast his vote. [1] ¶ 13. The entrapment-by-estoppel

---

[4] Olaifa points out that these cases each involved the review of a decision made by the Bureau of Immigration Appeals, and that the Bureau's decisions are afforded more deference than the Immigration Service's. *See* [23] at 4, n.1. I cite these cases only to the extent they establish how the entrapment-by-estoppel or official-authorization defense works in the context of unlawful voting cases; I do not import any standards of review.

(or "official authorization") defense "is available to someone who makes complete and accurate representations to a public official and then receives permission from that official, when acting within the scope of his or her authority." *Fitzpatrick*, 847 F.3d at 915; *Keathley*, 696 F.3d at 646; *Kimani*, 695 F.3d at 670 ("When a public official directs a person to perform an act, with assurance that the act is lawful under the circumstances, the person does not act with the intent required for conviction.") Olaifa made a complete and accurate disclosure by telling the polling officer that he was "only a permanent resident." [1] ¶ 13. He received permission to vote from the polling officer. *Id.* And even if Illinois law does not empower state officials to direct or excuse violations of federal voting laws at polling places in Illinois, *see* [14] n.3 (citing 10 Ill. Comp. Stat. Ann. 5/13 and 10 Ill. Comp. Stat. Ann. 5/14), it was federal law that authorized state officials to interpret voting requirements in *Keathley*, not state law. 696 F.3d at 646. Olaifa would not be able to assert an entrapment by estoppel defense if the polling officer was not authorized to interpret federal law, but at this stage of the case, where the identity of the polling official is unknown, an inference in Olaifa's favor is that the person was someone acting within the scope of their authority as to federal law.

Finally, the complaint alleges extenuating circumstances that could justify naturalization notwithstanding an act of illegal voting. Extenuating circumstances are those which "render a crime less reprehensible than it otherwise would be, or tend to palliate or lessen its guilt." *United States v. Suarez*, 664 F.3d 655, 662 (7th Cir. 2011) (cleaned up). Extenuating circumstances "must pertain to the reasons showing lack of good character, including acts negating good character, not to the consequences of these matters." *Id.* (quoting *United States v. Jean-Baptiste*, 395 F.3d 1190, 1195 (11th Cir. 2005)). *See also In re Briedis*, 238 F.Supp. 149, 151 (N.D. Ill. 1965) ("merely technical" violation was "not a threat to public morality" and did not preclude a finding of good moral character). Olaifa says that he did not know that it was against the law to register to vote, did not know that he signed a piece of paper affirming that he was a citizen, and says he was specifically told by a polling officer that he could vote after being forthcoming about his status as a legal permanent resident. Even if he cannot establish a complete defense to (or his innocence of) the criminal laws that prohibit that conduct, he has made sufficient factual allegations to plausibly allege that there were extenuating circumstances—tied to his act of voting–that make his conduct less reprehensible. Drawing all reasonable inferences in Olaifa's favor, taking the facts alleged in the complaint as true, and reviewing the Director's factual and legal conclusions *de novo*, it is plausible that Olaifa is entitled to relief under 8 U.S.C. § 1421(c). Count I is not dismissed.

With regards to Count II, I have jurisdiction to determine whether the Service violated Olaifa's due process rights. That jurisdiction does not derive from the Declaratory Judgment Act or the All Writs Act, neither of which confer jurisdiction on their own. *Rueth v. E.P.A.*, 13 F.3d 227, 231 (7th Cir. 1993); *United States v.*

*Alkaramia*, 872 F.3d 532, 534 (7th Cir. 2017). It also does not derive from the Administrative Procedure Act, which cannot be used to fill "interstitial gap[s]" that fall between the branches of the district courts' limited jurisdiction. *Califano v. Sanders*, 430 U.S. 99, 107 (1977). *See also Rueth*, 13 F.3d at 231 n.3 ("the APA is not a fertile source of implied jurisdiction").

But Olaifa's due process claim does not fall in any gap; it arises under the Constitution. *See* 28 U.S.C. § 1331. Federal courts must entertain suits in which the complaint seeks recovery directly under the Constitution, except when the claims are "made solely for the purpose of obtaining jurisdiction or where such a claim is wholly insubstantial and frivolous." *Bell v. Hood*, 327 U.S. 678, 682–83 (1946). *See also Simmat v. U.S. Bureau of Prisons*, 413 F.3d 1225, 1230–35 (10th Cir. 2005); *Ortiz De Arroyo v. Barcelo*, 765 F.2d 275, 280 (1st Cir. 1985) ("a federal district court has jurisdiction to hear a plaintiff's claim that a governmental entity has deprived him of his property without due process of law in violation of the fifth and fourteenth amendments"); *Restoration Risk Retention Grp., Inc. v. Gutierrez,* 880 F.3d 339, 345 (7th Cir. 2018) ("the district court had subject matter jurisdiction because [plaintiff] was suing to enjoin state officials' allegedly unconstitutional enforcement of state law and because it raised nonfrivolous due process and equal protection claims").

The result might be different if the United States had not waived its sovereign immunity—but it has. 5 U.S.C. § 702; *Trudeau*, 456 F.3d at 186 (the "APA's waiver of sovereign immunity applies to any suit whether under the APA or not"). And the result might be different if Olaifa did not have standing to bring his due process claim. *See* [28] at 6; *Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc.*, 528 U.S. 167, 185 (2000) ("a plaintiff must demonstrate standing separately for each form of relief sought"). But Olaifa suffered an injury (his petition for naturalization was denied) and that injury that was caused by the defendant's failure to act. *See Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560–61 (1992); *Pritikin v. Dep't of Energy*, 254 F.3d 791, 797 (9th Cir. 2001) (a failure to act can satisfy the causation requirement for purposes of Article III standing). Olaifa's injury is also redressable. His complaint seeks (among other relief) an order compelling the defendants to adjudicate the petition considering the factors set forth in their guidelines. [1] ¶ 34. The government says that type of relief cannot be provided because review of the naturalization petition is the "sole issue in a § 1421(c) case." *See* [28] at 6. But as a remedy for a due-process violation, separate from a § 1421(c) claim, the scope of injunctive relief may very well be broad enough to redress the injury. The government also says that it no longer has jurisdiction to adjudicate Olaifa's naturalization petition, [28] at 7 (citing 8 U.S.C. § 1421(c)), but § 1421(c) says only that a person whose application is denied may seek review of that denial in a district court; it does not say that the district court cannot remand the decision to the Immigration Service for further consideration. *See, e.g.* 8 U.S.C. § 1447(b). Instead, in extreme cases, mandamus relief may be available under the All Writs Act for "failure to perform a clear,

nondiscretionary duty" during the review of a naturalization petition. *Escaler v. U.S. Citizenship & Immigration Servs.*, 582 F.3d 288, 291 (2d Cir. 2009); 28 U.S.C. § 1361. The due process claim is redressable, and I have the power to decide whether Olaifa has stated a claim. *Gautreaux v. Romney,* 448 F.2d 731, 735 (7th Cir. 1971) ("Jurisdiction would still exist even though … no cause of action … had been stated.")

Olaifa's due process claim alleges that the Service failed to engage in the analysis required by an internal memorandum issued in 2002 by William R. Yates, the Deputy Executive Associate Commissioner of the Office of Field Operations. [1] ¶ 29; [23] at 7–8, 12; Memorandum from William R. Yates, Deputy Executive Associate Commissioner, Office of Field Operations, Immigrant Services Division, re: Procedures for Handling Naturalization Applications of Aliens Who Voted Unlawfully or Falsely Represented Themselves as U.S. Citizens by Voting or Registering to Vote (May 7, 2002), available at https://www.uscis.gov/sites/default/files/USCIS/Laws/Memoranda/VoterMem_Plus86.pdf (last visited October 15, 2019).

In support, he cites (among other cases) *United States ex rel. Accardi v. Shaughnessy,* 347 U.S. 260 (1954), where the Supreme Court held that the Attorney General had violated regulations that had the force of law when, by circulating a confidential list of "unsavory characters" that he wanted deported immediately, he made a "public prejudgment" that deprived the petitioner of fair consideration by the Board of Immigration Appeals. *Id.* at 265–268. Olaifa also cites *Jean v. Nelson*, which concerned a statute that delegated Congress's authority over incoming undocumented aliens to the Attorney General, (8 U.S.C. § 1182(d)(5)(A)), and a regulation that the Attorney General implemented delegating that same authority to district directors at the Immigration and Nationalization Service (a precursor to the United States Citizenship and Immigration Service that is a defendant here). 472 U.S. 846, 848, 855–56 (1985); 8 C.F.R. § 212.5 (1985).[5]

But agency manuals and policy memoranda that have not been subject to "a formal adjudication or notice-and-comment rulemaking" lack the force of law and are at most "entitled to respect" insofar as they have the "power to persuade." *Christensen v. Harris County*, 529 U.S. 576, 587 (2000) (quoting *E.E.O.C. v. Arabian Am. Oil Co.*, 499 U.S. 244, 257 (1991)); *Vulcan Const. Materials, L.P. v. Fed. Mine Safety & Health Review Comm'n*, 700 F.3d 297, 316 (7th Cir. 2012). Yates's memorandum is no

---

[5] Olaifa also cites a string of cases, many of which are not binding, and the rest of which do not stand for the proposition that a protected entitlement may be created by an internal policy memoranda that was not reviewed or approved by Congress (nor authorized by Congressional delegation). *Plewa v. I.N.S.*, 77 F.Supp.2d 905, 910 (N.D. Ill. 1999); *Serv. v. Dulles*, 354 U.S. 363 (1957); *Bridges v. Wixon*, 326 U.S. 135 (1945).

different. *Gutierrez v. Gonzales,* 458 F.3d 688, 693 (7th Cir. 2006) (memoranda written by an official from the Chicago District Office of the Immigration and Naturalization Service did not have the force of law).

In any event, Olaifa's claim is not that the Immigration Service erred when engaging in the analysis set forth in Yates's memorandum; it's that the Immigration Service violated his Fifth Amendment rights by failing to engage in that analysis at all. *See* [1] ¶ 29. But in order to make out a procedural due process claim, Olaifa must also show that he "has been (or is threatened with being) deprived of life, liberty, or property." *Cevilla v. Gonzales*, 446 F.3d 658, 662 (7th Cir. 2006); *Reno v. Flores*, 507 U.S. 292, 306 (1993). Even if the Director's analysis was "so wacky as to constitute a denial of due process of law … a procedural entitlement is not a liberty interest." *Id.*; *Olim v. Wakinekona*, 461 U.S. 238, 250 (1983) ("Process is not an end in itself. Its constitutional purpose is to protect a substantive interest to which the individual has a legitimate claim of entitlement.") Olaifa has not identified any substantive liberty interest that was impinged by the Immigration Service's failure to apply the factors set forth in Yates's memorandum. *See, e.g. Adame v. Holder*, 762 F.3d 667, 670 (7th Cir. 2014) (no liberty interest in "favorable decisions that would allow the petitioner to seek discretionary relief"); *Jabateh v. Lynch*, 845 F.3d 332, 339 (7th Cir. 2017) (no liberty interest in adjustment of immigration status); *Hamdan v. Gonzales*, 425 F.3d 1051, 1061 (7th Cir. 2005). Olaifa does not have a protected liberty interest in citizenship in part because government officials had the discretion to grant or deny his citizenship application. *Town of Castle Rock, Colo. v. Gonzales*, 545 U.S. 748, 757 (2005) ("a benefit is not a protected entitlement … if government officials may grant or deny it in their discretion"). His due process claim (Count II) is dismissed.


ENTER:

Date:  October 15, 2019

_____
Manish S. Shah
U.S. District Judge